The next case on the call of the docket is agenda number 7, number 126187. People of the State of Illinois v. Michael S. Yost. Catherine Marie Dorsch, please proceed. Good morning. May it please the Court. Counsel. I'm Assistant Attorney General Catherine Dorsch on behalf of the people. The appellate court in this case reversed the defendant's murder conviction upon finding that his attorney, the defendant's attorney, then-public defender Bradford Rau, had a per se conflict of interest because he had previously represented the defendant's murder victim, Sherry Randall. This Court should reverse that judgment, however, because that judgment is contrary to this Court's holding in People v. Hillenbrand, which holds that a defense attorney's prior representation of a victim does not constitute a per se conflict. Hillenbrand's rule itself is clear. It says to establish a per se conflict, the defendant must show that, quote, the attorney has a contemporaneous conflicting professional commitment to another. So in Hillenbrand, this Court considered the circumstances of the defendant's case and concluded that because the attorney's representation of Hillenbrand's victim and her parents had concluded long before the murder, counsel had no per se conflict. So a straightforward application of Hillenbrand leads to the same results in this case. Public defender Rau's representation of defendant's victim, Sherry Randall, had concluded years, perhaps seven years, before the murder. Thus, under Hillenbrand, Rau simply did not have a per se conflict of interest. The appellate court reluctantly found a conflict of interest, thinking it was somehow bound by dicta in this Court's later decision in People v. Hernandez. That's incorrect. It is true that Hernandez, in this Court's decision in Hernandez, Hernandez included a statement to the fact that the Court had in the past clearly stated that a prior relationship with a victim falls in the per se conflict category. But none of the cases, and there were many cases cited in support of that proposition, but none of the cases cited in support of that proposition actually found a per se conflict based on prior representation. In fact, my research uncovered no case in this Court finding a per se conflict based on prior representation. Not only that, but the statement in Hernandez was dicta because it was unnecessary to the resolution of that case. It was dicta because Hernandez was plainly a contemporaneous representation case. In Hernandez, the attorney represented both the defendant and his victim. And this Court said, well, rejected the people's argument that counsel's contemporaneous representation must also be active to constitute a per se conflict. Sotomayor, how would you craft the rule that you wish the Court to enter? I'm sorry? Hernandez' broad rule, we would advocate it, but this Court need not go so far. What we're asking this Court to do today is to reaffirm Hillenbrand's core holding that when the defendant, the defense attorney has prior representation of a deceased victim, that there's no per se conflict.  And it would be essential that it be of a deceased victim? That's what we're asking the Court yesterday. There could be circumstances. Certainly, I do think that the contemporaneous rule should hold. But there could be circumstances, perhaps. I can conceive of a case where there's a living victim that, you know, representation was fairly recent, and perhaps defense counsel had earned a great deal of money and that prior representation hoped to, you know, that this person would retain their services in a future proceeding. So we're asking the Court today simply to limit it to the facts of Hillenbrand and the facts of this case, the deceased prior victim or the deceased prior client. Ms. Dorsh, if the Court explains the current black-letter law on conflicts of interest in Illinois as it did in Hernandez and other cases, is it really obiter dicta? It is dicta, Your Honor. So Hernandez, for example, appears to be the first case in which this Court used the sort of what I like to think of as sort of the contemporaneous three-part recitation of the per se conflict rule. So Hernandez and later decisions of this Court, like Fields and more recently even Green, state that a per se conflict exists in the first instance where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution. But because neither Hernandez or any of these later cases, Fields, Green, none of them, even though they use that same three-part recitation, none of them could have implicitly overruled Hillenbrand because the precedential value of a decision is limited to the facts that were before the Court in that decision. So it is not dicta for that reason. So accordingly, the counsel should have simply followed Hillenbrand here. Counsel, may I ask you a question about the record? Mr. Rao is the attorney that we're talking about here, as I recall. Yes. And can you tell us, does the record give us more information about his role as a public defender of Moultrie County? In other words, I saw somewhere in your briefs that he testified that he comes in on Mondays. Is he part-time? Is he full-time? Can you tell how many clients he has? Can you tell anything like that from the record? It's not in the record, and I did a little bit of sort of off-the-record research that didn't really shed any real light on that. He said he would come in on Mondays and he'd have a crew and he'd meet with them in the hall and review the folder, and then two months later he'd come in and plead them out, and he actually didn't have any recollection whatsoever of having represented the victim in this case. It was a misdemeanor case. You know, so I don't think that's atypical. I guess the point to be taken from that or the, you know, the point to be taken from that is often, you know, a public defender isn't going to have recollection of some of these sort of, you know, misdemeanor representations that occurred a long time ago. Counsel, what's interesting is that the first place that I could see this prior or contemporaneous representation was in Spreitzer. And Spreitzer, of course, was factually inept at this, but it was actually decided from this Court on the exact same day as Hillenbrand. And, of course, Hillenbrand disavowed the prior representation. So, I mean, that's just an observation, I think. It seems to have just worked its way into the prior, seems to have worked its way into that recitation of the per se conflict rule, but as I said, I was unable to find any other case, any case from this Court holding that a prior representation would constitute a per se conflict. That's why we think that not only was Hillenbrand controlling, but it was correctly decided, because the per se conflict rule, again, is a per se, is a Court-created rule that creates a presumption, right, a presumption of prejudice in circumstances where counsel has a tie to a person or entity that would benefit from an unfavorable victim for the defendant. But that presumption doesn't hold in this circumstance, right, because, and therefore it shouldn't be applied, because the attorney's prior representation, if it's by appointment, there's no, he's not subject, he's not going to be subject in later charges. His representation was somehow unfaithful because he had earned a bunch of money from a prior client. And when the prior client is deceased as well, it simply can't be said that a deceased client would benefit from that unfavorable verdict for the defendant. The counsel, which you're suggesting, are a number of factors that a court should consider. Factor one, factor two, factor three. Is that right? There are, well, there are three, sort of three ways in which, yes, a defendant can establish a per se conflict. Is that what you mean? Yes. He's only ever argued that it fell under this first prong, right? The second prong is, involves when counsel has a contemporaneous representation with a witness, which wouldn't apply here. And the third one is where defense counsel was previously involved in the case as a prosecutor somehow. So only really, it's only really that first prong that's under consideration in this case. Counsel, can you address, counsel, can you address that, you know, the policy reasons for the per se conflict, we don't have to go into an inquiry where per se It doesn't have anything to do with finances, okay? But the defendant, what faith is the defendant going to have in his attorney's loyalty, knowing that the attorney previously represented the victim? And tell me why the per se conflict should not exist in a case such as this. And I understand your point. The defendant's loyalty, I mean, it's not a factor that this Court has ever really pronounced in talking about the per se conflict rule, whether a defendant feels comfortable with his attorney or really feels that, you know, his attorney is loyal to him. It's not a factor that's really animated this Court's per se conflict jurisprudence. I think basically the big overarching concern in these cases, whether, you know, whether the defendant, the attorney has this tie to someone who would benefit from an adverse verdict to the defendant, that's sort of the overarching, the animating concern in this Court's per se conflict jurisprudence. If the attorney, if the defendant, of course, has a concern, I mean, this is just a presumption. The per se conflict rule, as I was saying, establishes a presumption, and the defendant need not show precedence. But if the defendant in any case has any question about his attorney's representation or loyalty, he can always bring a claim under the Sixth Amendment, but there he would have to show that due to the circumstances of his case, you know, there was some sort of a – how do I want to say it? He was prejudiced by his counsel's performance, right? Whatever this tie to the victim somehow prejudices defense. So if he can't bring it under the per se conflict rule, he does have another option under the facts of his case, but he would have to show prejudice on that ground. So limiting the per se conflict rule and sort of making sure it applies only when its purposes are satisfied, it makes sense. And you also have to keep in mind, too, that the per se conflict rule comes with a harsh consequence of automatic reversal. So we don't want to – we want to make sure that we're applying it in circumstances where that presumption holds true in most relative cases. And it's important to point out, too, here, that perhaps getting back to Justice Tice's question, earlier question a little bit, the per se conflict rule does seem to have an outsized impact in smaller counties. You can have a public defender. Mr. Rao was now judge, but when he was public defender, he was public defender for over a decade, and that could set up any number of conflicts, you know, with prior representations of victims, defendants, witnesses. And the same sort of – the same possibility for conflicts was also illustrated at the Crankle hearing where they investigated this, you know, potential per se conflict. And Crankle counsel had previously represented Mr. Rao in another decision. The new judge had previously represented the defendant and the defendant's father in prior proceedings. So in smaller counties, you've got a lot of cross-representation going on, and so you don't want to apply the per se conflict rule in a situation where it's really not advancing its goals. Again, given the consequences of the per se rule, this Court should limit its application to those purposes. Counsel, you indicated in your brief that Illinois' law here is unique, that most jurisdictions, Federal courts, do not apply the same kind of rule. Is that correct? I'm sorry? Is that correct, as you say, that most jurisdictions or maybe no other jurisdiction applies a per se conflict rule in the way we do? I looked – I did look, and we had our law clerk do some research, Your Honor, and really not find per se conflict anywhere else. It is a court-curated rule. It doesn't appear to have any constitutional basis, certainly no Federal constitutional basis. Basically, just creating a presumption in circumstances where the danger that there's a risk that this Court deemed too high, that someone with a tie, the defendant has a tie, the counsel has a tie to someone who could benefit from an unfavorable verdict to the defendant, and in those circumstances, this Court is elected to relieve the defendant of the burden of proving prejudice. In sum, then, if this Court is inclined to retreat from or narrow Hillenbrand's broad statement that a per se conflict arises only when an attorney has a contemporaneous conflicting professional commitment to another, to properly cabin the operation of the per se conflict rule and its harsh consequences, this Court should reaffirm Hillenbrand's core holding that defense counsel's prior representation of a deceased victim was not a per se conflict of interest. Any more questions? Thank you, Ms. Dorff. For the appellee, Ms. Cheryl Vargas. Thank you. Good morning, Your Honors, and may it please the Court. Counsel, my name is Cheryl Vargas. I'm with the Office of State Appellate Defender, and I represent Michael Yost. The per se conflict rule is simple and straightforward. If counsel has previously represented the victim, there is a per se conflict. Counsel must then bring this to the trial court's attention, at which point the defendant may then make an informed decision as to whether to waive that per se conflict. The simplicity of this rule is borne out on what happened when this case was remanded to the State Act for a crinkle inquiry. Appointed counsel Walter Lukowski and trial judge Hugh Finson identified potential conflicts, informed Mr. Yost of those conflicts, and then Mr. Yost waived those conflicts knowledgeably and voluntarily. However, if counsel doesn't run a conflict track, as Counsel Rao didn't in this case, then counsel misses the conflict. And where counsel has labored under a per se conflict throughout the trial, this new trial is warranted, and we'd request that this Court likewise do so in this case. Turning to the State's first point, People v. Hillenbrand does not dictate the outcome of this case. The issue of counsel's prior representation of the victim was not before this Court in Hillenbrand. In that case, the defendant made two arguments on appeal. He argued there was a per se conflict because counsel had regularly represented the victim's parents in business and personal matters, and he alternatively argued that there was a per se conflict because the victim's parents might be prosecution witnesses. The defendant's arguments were in relation to the victim's parents, not the victim herself. As such, the Hillenbrand Court's comment is obitur dicta, and it's inconsistent with this Court's subsequent decision in People v. Hernandez. In Hernandez, this Court held that to ensure a defendant's right to effective assistance of counsel is given effect, the per se conflict rule applies whenever an attorney represents a defendant and the victim of the defendant's offense, regardless of whether the representation was active and without inquiring into the specific facts of the case. The Hernandez Court's analysis was not dependent on whether counsel's relationship with the victim was active, nor was it dependent on counsel's averment of a continuing obligation to the victim. In fact, this Court noted that the very nature of the per se conflict rule precludes inquiry into the specific facts of the case. This Court has found that it was counsel's status itself that dictates application of the per se rule. Similarly to the Hillenbrand Court's analysis, the per se conflict rule does not apply defendant who was on warrants status. Why in Hernandez did this Court go to the trouble of saying that our holding is not at odds with Mickens? And Mickens was clearly an active representation case. Mickens held, the U.S. Supreme Court held, that since there was no active representation, it was not a per se conflict. Yes, Your Honor. This Court delved into Mickens v. Taylor in Hernandez because the State specifically asked this Court to essentially reject the per se conflict rule and to use an actual conflict analysis like many other courts do across the States. But this Court specifically said not only that it wasn't that this Court simply analogized between Mickens and Hernandez. This Court specifically said that this issue was not before this Court in Mickens. The Mickens Court didn't look to see whether there was a per se conflict. That Court was specifically looking to see what happens when there's a potential conflict in the trial court's duties. Also, the Mickens Court allowed for exceptions, such as chronic, where the defendant doesn't have to show prejudice. And this Court specifically analogized to Mickens and said, while Mickens was not directly on point, there are certain situations where there's a high degree of difficulty in proving prejudice, even though there's also a high probability that there is prejudice. And Hernandez was one of those situations where counsel had a relationship with the victim. Now, the victim had at that point fled from the country. He was he had actually fled because if he had come back, he would have had to actually face his own charges. There was no indication he was coming back. So this Court noted that it had previously held that a prior representation was sufficient to constitute a per se conflict. Nothing about this case changes that equation. The per se conflict rule is in compliance with U.S. Supreme Court precedent. It's essentially the same way that this Court has used Illinois Supreme Court Rule 402 to implement Boykins v. Alabama. Boykins v. Alabama requires that defendants enter their guilty pleas knowing involuntarily in order to comport with due process. Then this Court implemented Illinois Supreme Court Rule 402 to tell trial courts exactly how to implement that process to assure that defendants are given their due process right before entering into a guilty plea. Similarly, the per se conflict rule in Illinois acts to implement the Sixth Amendment right to effective representation. Here, where counsel had a prior relationship with the victim where he's previously represented her, he has a duty to tell his client that and then to get an informed waiver on the record. That's all we're asking counsel to do, that when counsel takes on the case to run a conflict check, and then when he runs a conflict check, he would have seen this conflict, then it's not the be-all, end-all that the State is making it seem. This is not disproportionately affecting smaller counties because it's not as if every time there's a per se conflict, the Court has to appoint a new attorney. No. The defendant can waive his right to conflict-free representation. And that's actually what Mr. Yost did. Ginsburg. May I ask a question about when you say he could have run a conflict check? What kind of system should the Moultrie County Board pay for? What kind of conflict check would have picked up a representation by a part-time public defender seven years before this event? Your Honor, Mr. Yost's mother found the conflict on Judici, which is a public records website. So in each case, a public defender needs to go through? I'm not sure what you mean by conflict check. Your Honor. How does it get done? Your Honor, when a public defender is appointed to a case, counsel has an obligation to see if he has any conflicts with the victim or with any of the State's witnesses. So in your theory about a per se conflict, every appointment of a public defender here in a misdemeanor, before the public defender can engage in the case and interview the client, the public defender should run some kind of search through the Court's records on each case? Is that what you're saying? Your Honor, oftentimes public defenders, just like any other counsel, has their own records of their prior clients. Conflict checks are procedures that many law firms, many public defenders' offices, and even the Office of the State Appellate Defender regularly runs to make sure that there is no conflict before we take on a client, or after taking on a client, before we fully represent them, we make sure that there is no conflict of interest. And so every county should fund such a program for every public defender's office. Your Honor, I'm not sure that such a program doesn't already exist. I'm not sure it's necessarily a program, so much as searching through their own files, because everything is electronic, just simply typing in the victim's name might be enough to bring up a conflict. Ms. Vargas? Yes, Your Honor. Isn't it the responsibility of all lawyers in Illinois to run conflict checks when they are retained by a client? Yes, Your Honor. And that they all do so. Yes, Your Honor. That's my understanding, because if they didn't do so, if this per se conflict rule was as complicated as the State is suggesting, this issue would have been before this Court numerous times at this point. But no. What usually happens is counsel runs a conflict check, realizes that there's a conflict. In Walter Lukowski's and Judge Vinson's case, those weren't actually even per se conflicts, but they were able to determine that they had represented the defendant 20 years prior, they had represented the defendant's father. These are all things that were within their purview. So we expect public defenders in that same way to be able to run conflict checks so that they can guarantee that their clients have effective assistance of counsel. The per se conflict rule is very simple, and it is not very broad. This Court has limited it to three very distinct categories. People v. Hernandez is directly on point with this case. This Court has not required active representation, and it is because the twin rationales behind the per se conflict rule remain true whether the victim is deceased or not. Now, the State's alternatively asking this Court to narrow the per se conflict rule when the victim is deceased and when counsel has been appointed to the victim. These are very specific exceptions specific to Mr. Yost's case. The State is essentially asking this Court to adopt a Yost exception. But wholly excluding deceased victims where counsel was appointed is unworkable. It doesn't account for the length and complexity of the relationship between counsel and the victim. Now, in this case, Mr. Rouse said he didn't remember the victim, that he had represented her seven years prior, so he felt no continuing obligation to the victim. But what would have happened if he had represented the deceased victim a month before she was killed? Or what if he had represented her for 20 years on and off in different minor cases? In both of those situations, counsel would have an intimate knowledge of the victim, and there would be no doubt that there would be an actual conflict. And the defendant would certainly be able to raise that in a motion for setting forth this actual conflict? Your Honor, if this Court were to adopt the State's exception, that would no longer be a per se conflict. The defendant would have to show an actual conflict in a case where it might be difficult to show real prejudice. You know, the basis of this rule, which is very unusual throughout the country, the basis of this per se rule, as it relates specifically to prior representation of a victim, again, I called it back to Spicer. Maybe it goes back further. Maybe I'm wrong. But that's where the first time I saw the phrase prior or contemporaneous association. And then the Spicer Court went on to list four cases as a basis for that. And there wasn't one case that had to do with the prior representation of a victim. There were three simultaneous cases. And then the only one with the prior had to do with someone being a prosecutor previously and actually stepping up on the defendant's case against the defendant and then representing the defendant later. So, you know, this is an example of language that's put into a case. The basis for it is somewhat questionable based upon the cases that are cited for  And then it just keeps getting repeated and repeated and repeated. And then the closest we come to this case here is Hernandez, which, again, has an ongoing obligation between the attorney and the client. Your Honor, I'm not sure which cases specifically the Spicer Court noted, but I do know that in People v. Stottle, the first case that this court remanded based on a conflict, yes, it was a simultaneous representation case, but it was also a prior representation case because in that case, counsel and counsel's law firm had previously and contemporaneously represented both the manager of the jewelry store and the jewelry store itself. And so this Court found that there was a per se conflict in that case, and in finding that per se conflict, this Court did not distinguish between simultaneous and contemporaneous representation. This Court simply set out the twin rationales for the conflict of interest rule, which is the idea that not only will this conflict maybe subliminally affect counsel's representation, but also its idea of the appearance of impropriety, the idea that a defendant might come back after trial and feel that counsel was not faithful. As Your Honor noted, how can counsel – how can the defendant really feel confident that his counsel is faithful to his representation, especially in a murder trial where he was eventually sentenced to 75 years in prison when he only finds out about counsel's prior representation of the murder victim after trial and through his mother who looked at – up in public records? This is exactly a situation where the second prong of that rationale applies. It's the appearance of impropriety. We want to make sure that defendants are going into trials knowing that they have effective representation by counsel. And, Your Honor, Saville is not the only case in which this Court has discussed prior representation. In People v. Lewis and People v. Free, this Court was looking specifically at prior personal relationships. And this Court contrasted prior personal relationships with prior professional relationships and found that a prior personal relationship is not a per se conflict, but a prior professional relationship is. And Your Honor noted – How many states, again, did you find have this per se rule? Your Honor, I was unable to discover whether there are any other states that have this kind of per se conflict rule. But this rule works in Illinois. This rule works to ensure that clients are given the effective right to assistance of counsel. So we'd ask this Court to stand by its own rules because this Court has looked at this rule time and time again. Even as recently as 2020 in People v. Green, this Court looked at this rule and found that it was unwilling to expand it. So despite the fact that other states might not have the equivalent rule, this is a good rule to ensure that clients are given the effective assistance of counsel. But you're advising this Court that all these problems can be solved if the attorney runs a conflict check. If he determines there's a conflict, he discloses that fact to his client, and then we don't have this kind of case in our Court. Is that correct? Yes, Your Honor. Because in that situation, the client is faced with two options, to waive the conflict or to proceed forward and ask for new counsel. Now the state points out that, you know, this rule disproportionately affects smaller counties because, you know, smaller counties might not have the ability to constantly bring in other counsel. But counsel can actually make that argument to the defendant, right? Like, that is actually a very appealing argument to defendants because counsel in smaller counties are familiar with local rules. They are familiar with the judges and with the local systems. So counsel can tell the defendant that they are, first of all, that they have no conflict, that they don't remember. All Mr. Rao had to do is tell Mr. Yost that he didn't remember the client previously, that he only represented her in a minimal way, and that he felt no continuing obligation to her. Then he could have explained to Mr. Rao that he was very familiar with the smaller county, that he was familiar with Moultrie County's practices, with their judges and with their state's attorneys, and that he was the best person to represent him. Now, Mr. Yost had no problem waiving the conflict with Mr. Lukofsky, and it's speculation to assume that defendants will simply ask for new counsel over and over and over again in smaller counties just because they have the ability to do so. Counsel in smaller counties know that they often do represent overlapping interests. So they especially have this duty or this idea that they should run conflict checks, and that's all that was required in this case, was the counsel run a conflict check and determine whether there was a conflict, at which point he could be honest and forthright with Mr. Yost. Counsel, even if we didn't have a first aid rule, don't you think it would be prudent by any lawyer to run a conflict check because ultimately at the end of a case and the client found out that there was a relationship no matter how far away it was, they could come into court and say that they were prejudiced by having someone represent them that had represented that client?  Yes, Your Honor. It is prudent. It just seems like if you do it up front, even if there was no first aid rule, it would avoid a lot of problems. Yes, Your Honor. It is prudent. And while this is, according to the State, a windfall for the client, this Court has to remember in People v. Coslett, this Court was willing to risk that defense counsel and the defendant collude to hide a first aid conflict because it said that it was prepared to take that risk where a defendant's right to effective assistance of counsel is at stake. The first aid conflict rule provides a bright line categorical exception or rule that protects defendants who are in a situation where there's a high degree of prejudice that's probable, but an equally high degree of difficulty in proving that prejudice. You certainly are not arguing any kind of actual prejudice. You would agree that this lawyer was a zealous advocate for his client. Correct? Your Honor, from what appears in the record, it seems like Mr. Rao was a zealous advocate, but that's just the nature of the first aid rule, is that we don't know exactly how his representation would have been different if he hadn't had that first aid conflict. It's a subliminal fact. There's nothing you could point to that could have been done differently in this case? There's this is all just a feeling that we have, that perhaps some subliminal way he would have done something in addition to what he already did. Your Honor, yes, but that is the purpose of the first aid rule. The first aid rule is intended to cover this exact same, this exact situation where it seems like everything in the trial went well, but then, you know, we just don't know if there was, if counsel's representation was subliminally affected. And the other rationale for the first aid rule is we don't want a situation where the defendant feels like after the trial he learns of counsel's conflict and he wonders why counsel didn't admit to it in the first place. That's the other rationale behind the first aid rule, is appearance of impropriety, and that is apparent in this case. Mr. Yost, sorry. Counsel, something you said earlier tickled in my mind, and I, is there any, is there any concern that by adopting what you are espousing, that we would be encouraging defense counsel not to run this conflict check, because at the end of the day, if the client gets convicted, it's an automatic reversal? Your Honor, I see my time is up. Can I answer your question? Yes. No, Your Honor, because as this Court said, it's willing to take that risk to guarantee a defendant's effective assistance of counsel, right? Now, even in those situations, we can't presume that defense counsel would sit on such a claim, because a defendant's best bet is to go to trial with everything they have and argue it. A new trial is not necessarily going to change the outcome, because a new trial, the State is going to bring in the exact same evidence, defense counsel is going to make the exact same arguments. It's not as if that this first aid conflict rule means that there's a reversal of the conviction altogether. All it is giving the defendant is a new trial where he's represented by conflict-free counsel. So we'd ask this Court to stand by its first aid conflict rule, a rule that's been in place since People v. Stavel, and find that there is a first aid conflict in this case where Mr. Yost was represented by the same attorney that represented the murder victim. Thank you, Your Honors. Ms. Dorsch? So, again, no case, I'd like to emphasize, no case from this Court holds that a prior representation constitutes, prior representation of a victim constitutes a first aid conflict. So when Mr. Rowe had done, presumably he did, if he's required to do a conflict check, had he run a conflict check and read this Court's decision, People v. Helen Brand, he would not have found or believed, based on this Court's precedent, that he had any conflict in representing the defendant because of his prior relationship with the victim. The other point I wanted to make in closing is when we were talking about the dangers of the first aid conflict rule and how if you applied in a circumstance where it applies to all prior representation, then in a small county, you could have a lot of conflicts. And my opponents, well, the system worked just as it should have. They eliminated all the first aid conflicts, and it worked perfectly here. What happened at the, at the, at the Crankle hearing was not application of the first aid conflict rule. That was completely different. When we're in the Sixth Amendment, we're talking about potential conflicts that fall under the Sixth Amendment. Judges frequently encounter these things. Under Holloway v. Arkansas, when a judge is aware before trial of a potential conflict, the Sixth Amendment imposes a duty to sort of disclose it, discuss, inquire about the potential conflict, and see if there's any risk of conflict that's too great that would require appointment of another attorney if the, of course, the defendant is unwilling to waive the conflict. So that, all that inquiry, as I was referring to it, was simply to illustrate the, the downside of applying a prior representation rule as a first aid conflict. But it did not intend to suggest that it was somehow an application of the first aid conflict rule itself. And, again, under the Sixth Amendment, if a defendant does not bring a prior conflict, doesn't bring a conflict to the court until after trial, then he has a burden to show an actual conflict that adversely affects the representation. If this Court has no further questions, we'd ask that this Court reverse the appellate court's objection. Thank you. Thank you. Case number 126187, People, State of Illinois v. Michael Yost, will be taken under advisement by the Court as Agenda Number 7. Thank you, Ms. Dorsch, and thank you, Ms. Vargas, for your arguments this morning.